IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

NRRM, LLC d/b/a CARSHIELD;

        Plaintiff,

v.

KINGSTAR HOLDINGS, LLC; and
CARSURE, LLC;

        Defendants.

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR TRADEMARK INFRINGMENT

Plaintiff NRRM, LLC d/b/a CarShield ("NRRM") states the following for its Complaint against Defendants KingStar Holdings, LLC ("KingStar") and CarSure, LLC ("CarSure") (collectively "Defendants"):

### NATURE OF THE ACTION

1. This is a civil action for federal and state trademark infringement and unfair competition.

2. NRRM and Defendants are in the business of marketing and selling vehicle service contracts, which provide coverage for certain mechanical breakdowns and servicing for automobiles.

3. NRRM markets and sells vehicle services contracts using the marks CARSHIELD and CARSHIELD.COM, and it has federal registrations for and common law rights in those marks. NRRM has expended considerable resources in building the CARSHIELD brand in the vehicle service contract market.

4. After NRRM adopted its CARSHIELD brand, Defendants began marketing and selling vehicle service contracts under the name "CARSURE"—a name that bears an uncanny similarity to NRRM's CARSHIELD marks.

5. Defendants' use of the CARSURE name infringes on NRRM's protected CARSHIELD marks in the vehicle service contract industry, has caused confusion among consumers, and has resulted in damages to NRRM and has diminished its goodwill and reputation.

6. NRRM brings this action for federal trademark infringement and unfair competition under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and trademark infringement and unfair competition under Missouri statutory and common law. NRRM seeks a permanent injunction against Defendants' use of the CARSURE marks and any other designation confusingly similar to NRRM's CARSHIELD marks.  NRRM also seeks monetary damages resulting from Defendants' use of the CARSURE marks, an accounting of Defendants' profits gained from such use, NRRM's attorneys' fees and costs, and punitive damages.

**PARTIES**

7. Plaintiff NRRM, LLC d/b/a CarShield is a Missouri limited liability company with its principal place of business in St Charles County, Missouri.

8. NRRM is in the business of marketing vehicle service contracts in the state of Missouri.

9. KingStar Holdings, LLC is a Delaware limited liability company with its principal place of business at 10431 Morado Cir., Building 5, Suite 320, Austin, Texas 78759.

4835-8368-9544.1

10. Upon information and belief, KingStar is a seller and originator of vehicle services contracts.

11. CarSure, LLC is a Texas limited liability company with its principal place of business at 10431 Morado Cir., Building 5, Suite 320, Austin, Texas 78759.

12. Kingstar and its subsidiary CarSure sell vehicle service contracts out of a call center located in this judicial district. From that location, they sell to customers nationwide.

## JURISDICTION AND VENUE

13. This action arises under 15 U.S.C. §§ 1114 and 1125(a), as well as the statutory and common law of the state of Missouri. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1121 (Lanham Act claims), and 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

14. This Court has personal jurisdiction over Kingstar and CarSure because they maintain an office at 500 Northwest Plaza, Suite 1200, Saint Ann, Missouri 63074; employ salespeople in Missouri; and have marketed vehicle service contracts to and solicited Missouri consumers by sending mailers, making phone calls, and using other marketing techniques directed at Missouri consumers using the infringing CARSURE marks.

15. This Court has also personal jurisdiction over KingStar because it has licensed or otherwise authorized CarSure to use the CARSURE marks to market KingStar's vehicle service contracts from their call center located in the state of Missouri, and to solicit Missouri consumers to purchase such contracts, and has therefore specifically and purposefully directed its acts and the intended effects thereof at Missouri consumers.

16.     Venue is proper in this District because a substantial part of the events and omissions giving rise to this claim occurred here, as Defendants market and solicit vehicle services contracts using the CARSURE marks from their location in Saint Ann, Missouri and directed those marketing and solicitation efforts towards consumers residing in this District, as well as received and made numerous sales phone calls from this District nationwide.

## FACTS COMMON TO ALL CLAIMS

### A. NRRM's Trademark Rights

17.     NRRM markets and sells vehicle services contracts.  It operates under the mark CARSHIELD.

18.     NRRM is the owner of a federal trademark registration, No. 5092752, issued by the United States Patent and Trademark Office ("USPTO") on November 29, 2016, for the standard character mark CARSHIELD.COM for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing." *See* Exhibit A.

19.     NRRM is the owner of a federal trademark registration, No. 5133928, issued by the USPTO on January 31, 2017, for the standard character mark CARSHIELD for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing." *See* Exhibit B.

20.     On June 30, 2016, NRRM filed an application with the USPTO to register the word mark "CARSHIELD FIELD" for "promoting business, sports, and entertainment events of others."  *See* Exhibit C.

21.     On June 30, 2016, NRRM filed an intent to use application with the USPTO to register the word mark "CARSHIELD FIELD" for "baseball cards," "drinking glasses and cups,"

"clothing, namely, t-shirts, hooded sweatshirts, jerseys, caps and hats," and "bobblehead dolls." *See* Exhibit D.

22. These registrations, applications, and common law rights to use the word CARSHIELD and CARSHIELD.COM in connection with selling vehicle service contracts constitute and shall be referred to collectively as the "CARSHIELD Marks."

23. NRRM has continuously used various CARSHIELD Marks in commerce to market vehicle service contracts since at least as early as April 2016.

24. NRRM has devoted substantial resources to the marketing, advertising, and promotion of the CARSHIELD Marks in connection with selling vehicle services contracts.

25. NRRM owns and maintains a website at https://www.carshield.com that displays the CARSHIELD Marks, where customers can receive quotes for vehicle services contracts.

26. NRRM also uses the CARSHIELD Mark on print, television and radio advertisements used to market vehicle service contracts.

27. As a result of NRRM's continuous use of the CARSHIELD Marks in connection its advertising, promotion, distribution, and sale of vehicle service contracts, the relevant consuming public has come to recognize the CARSHIELD Marks as originating from and used by NRRM, and to associate and identify the services offered and sold under the CARSHIELD Marks exclusively with NRRM.  NRRM derives an invaluable goodwill from this recognition, association, and identification by the consuming public and the trade.

### B. KingStar and CarSure's Infringing Use

28. On November 2, 2016, KingStar filed an intent to use application pursuant to Section 1(b) of the Lanham Act with the USPTO to register the word mark "CARSURE" for "extended warranty services, namely, service contracts." *See* Exhibit E

29. On November 4, 2016, KingStar also filed an intent to use application pursuant to Section 1(b) of the Lanham Act with the USPTO to register a design and word mark for "[e]xtended warranty services, namely, service contracts." *See* Exhibit F.

30. KingStar authorized and approved of CarSure's use of the CARSURE marks on CarSure's website, https://www.carsure.com, as well as on print advertisements and in phone solicitations to market vehicle services contracts, beginning in early 2017.

31. The vehicle service contracts sold by Defendants directly compete with those sold by NRRM under the CARSHIELD Marks, and the contracts are sold through overlapping channels of trade, such as through print advertisements and online.

32. The CARSURE Marks are confusingly similar to the CARSHIELD Marks, and are likely to cause confusion amongst consumers as to the source of the vehicle services contracts advertised and sold.

33. Particularly, the CARSURE and CARSHIELD Marks:

   a. Are similar in appearance, as both begin with the word "car" followed by a word beginning with "s," are displayed as one word with the "C" and the "S" capitalized, and use similar shades of blue;

   b. Are similar in sound, as both begin with the word "car" followed by a word that begins with a "sh" sound; and

      c.    Are similar in meaning, as both marks suggest a sense of security and protection relating to a consumer's vehicle.

34.    Moreover, Defendants' use of the CARSURE Marks has caused actual confusion among consumers as to the source of vehicle service contracts sold by NRRM and those sold by Defendants.

35.    For example, one consumer posted the following comment on an online article about vehicle services contracts in general (*see* Exhibit G):

> I was approached by CarSure about a warranty. My extended warranty from a reputable agency had just ended since my vehicle now has turned over to the 75,000 mile mark. ***At first, I thought it was CarShield (advertised by Sean Hannity) who was writing to me.*** I still doubt that I would have been interested, but I did call and spoke with a lady at length. It sounded like a good plan and I was tempted, but wanted to ask my brothers who are into auto mechanics and auto sales. The cost of the plan was $3,200 and something. I was told then that the special might not last long. I was turned off and thanked her and hung up the phone. So far, I have not been recontacted by them. Others have called me and been very aggressive and even accused me of "not caring about my car anymore" or "What would happen if a car default caused an accident and you killed or badly injured someone? How would you feel?" I just hung up on them. Sounds like an industry that is just a scam.

(Emphasis added.)

36.    CarSure also has convinced consumers who believe they are contacting NRRM or CarShield to buy one of Defendants' contracts instead.

37.    Consumers who file complaints on third-party websites (such as the Better Business Bureau) about the vehicle services contracts they purchased or about marketing techniques used to sell such contracts sometimes mistake NRRM as the source of contracts and advertisements that actually come from Defendants, thereby damaging NRRM's reputation and goodwill.

38. Defendants knowingly, willfully, intentionally, and maliciously made and continue to make use of the CARSURE Marks in its advertisements and on its website, and have actual knowledge of such use over which Defendants have the right to exercise control, to exploit the commercial value of the CARSHIELD Marks and falsely suggest that Defendants' vehicle service contracts originate from or are sponsored or endorsed by NRRM.

39. Defendants' use of a confusingly similar mark has directly harmed NRRM's business by diverting vehicle service contract sales away from NRRM, resulting in a loss of revenue by NRRM and an improper profit to Defendants.

40. Defendants' actions have harmed, and will continue to harm, NRRM's reputation and goodwill associated with the CARSHIELD Marks, and result in additional injury that cannot entirely be quantified or captured.

## COUNT ONE
### Federal Trademark Infringement
### (Lanham Act Section 32 (15 U.S.C. §§ 1114))

41. NRRM restates the preceding paragraphs as if fully incorporated herein.

42. NRRM owns all rights, title and interest in and to the CARSHIELD Marks and holds federal registrations for those marks.

43. Defendants' use of the CARSURE Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that CarSure's vehicle service contracts originate from NRRM, are associated or connected with NRRM, or have the sponsorship, endorsement, or approval of NRRM.

44. Defendants have used marks confusingly similar to NRRM's federally registered marks in violation of 15 U.S.C. §1114, and Defendants' activities have caused and, unless

enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to NRRM's goodwill and reputation as symbolized by the federally registered CARSHIELD Marks, for which NRRM has no completely adequate remedy at law.

45. Defendants' actions are and were an intentional, willful, and malicious intent to trade on the goodwill associated with NRRM's federally registered CARSHIELD Marks, to NRRM's great and irreparable injury.

46. Defendants have caused and are likely to continue to cause substantial injury to the public and to NRRM, and NRRM is entitled to injunctive relief and to recover Defendants' profits, trebled profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116 and 1117.

## COUNT TWO
### Federal Unfair Competition/Trademark Infringement
### (Lanham Act Section 43(a) (15 U.S.C. §1125(a))

47. NRRM restates the preceding paragraphs as if fully incorporated herein.

48. NRRM owns all rights, title and interest in and to the CARSHIELD Marks.

49. Defendants' use of the CARSURE Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that CarSure's vehicle service contracts originate from NRRM, are associated or connected with NRRM, or have the sponsorship, endorsement, or approval of NRRM.

50. Defendants have made false representations, false descriptions, and false designations of origin of its services, and have infringed common law rights in the CARSHIELD Marks, in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless

enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to NRRM's goodwill and reputation as symbolized by the federally registered CARSHIELD Marks, for which NRRM has no completely adequate remedy at law.

51. Defendants' actions are and were an intentional, willful, and malicious intent to trade on the goodwill associated with NRRM's federally registered CARSHIELD Marks, to NRRM's great and irreparable injury.

52. Defendants have caused and are likely to continue to cause substantial injury to the public and to NRRM, and NRRM is entitled to injunctive relief and to recover Defendants' profits, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.

## COUNT THREE
### State Trademark Infringement and Unfair Competition
### (Mo. Rev. Stat. §§ 417.005-417.066 and Missouri Common Law)

53. NRRM restates the preceding paragraphs as if fully incorporated herein.

54. NRRM owns all rights, title and interest in and to the CARSHIELD Marks, including all common-law rights in the marks and rights pursuant to Mo. Rev. Stat. § 417.005 *et seq*.

55. Defendants' use of the CARSURE Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that CarSure's vehicle service contracts originate from NRRM, or are associated or connected with NRRM, or have the sponsorship, endorsement, or approval of NRRM.

4835-8368-9544.1

56.     Defendants have caused and are likely to continue to cause substantial injury to the public and to NRRM, and NRRM is entitled to injunctive relief and to recover Defendants' profits, costs, and reasonable attorney's fees.

57.     Defendants' wrongful conduct was willful and deliberate or recklessly indifferent to the rights of NRRM, warranting an award of punitive damages under Missouri common law.

## CONCLUSION

WHEREFORE, NRRM prays the Court enter judgment in its favor and award NRRM relief as follows:

1. That the Court permanently restrain and enjoin Defendants, their agents, servants, employees, and other persons in active concert with Defendants, from any and all further use of the CARSURE Marks or any other confusingly similar marks;

2. That the Court permanently restrain and enjoin Defendants, their agents, servants, employees, and other persons in active concert with Defendants, from any and all further use of the domain name "carsure.com";

3. That NRRM be awarded all damages incurred as a direct and proximate cause of Defendants' unlawful conduct;

4. That NRRM recover from Defendants all amounts, including profits, received by Defendants as a direct and proximate cause of Defendants' unlawful conduct;

5. That NRRM recover from Defendants treble, exemplary and punitive damages, based on their willfulness and/or reckless indifference to NRRM's trademark rights, available under the Lanham Act (treble) and Missouri law;

6. That Defendants pay NRRM's reasonable attorney's fees, based on their willful and deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a);

7. That NRRM be awarded prejudgment interest;

8. That NRRM be awarded post-judgment interest;

9. That the Court grant NRRM such other and further relief as the Court may deem just and proper.

Dated:  June 14, 2017						Respectfully Submitted,


							By: *s/ Jeffrey H. Kass*
								Jeffrey H. Kass, Bar. No. 46800
								LEWIS BRISBOIS BISGAARD & SMITH LLP
								1700 Lincoln Street, Suite 4000
								Denver, Colorado 80203
								Phone: 303-861-7760
								Fax: 303-861-7767
								Jeffrey.Kass@lewisbrisbois.com
								*Attorneys for Plaintiff*