UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NRRM, LLC d/b/a/ CARSHIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17cv01665 PLC |
| | ) |
| KINGSTAR HOLDINGS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion to dismiss filed by Defendants Kingstar Holdings, LLC and Caresure LLC.[1] (ECF No. 11). Plaintiff NRRM, LLC filed a memorandum in opposition to Defendants' motion to dismiss. (ECF No. 15), and Defendants filed a reply brief in support of the motion (ECF No. 20).

*I.  Factual and Procedural Background*

The facts, as alleged in the complaint, are as follows: Plaintiff markets and sells vehicle service contracts under the marks CARSHIELD and CARSHIELD.COM (collectively, "CarShield marks"). (ECF No. 1 at ¶¶ 2-3). On November 29, 2016 and January 31, 2017, the United States Patent and Trademark Office (PTO) issued to Plaintiff the standard character marks "CARSHIELD.COM" and "CARSHIELD" for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown servicing."[2] (Id. at ¶¶ 18-19; ECF Nos. 1-3,

---

[1] The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).
[2] On June 30, 2016, Plaintiff filed with the PTO applications to register the word mark "CARSHIELD FIELD" for "[p]romoting business, sports, and entertainment events of others" and for baseball cards, drinking glasses and cups, and clothing. (ECF Nos. 1 at ¶¶ 20-32, 1-5, 1-6).

1

1-4). Plaintiff has continuously used various CarShield marks since April 2016 and has devoted substantial resources to marketing, advertising, and promoting those marks. (ECF No. 1 at ¶¶ 23-24).

Like Plaintiff, Defendants market and sell vehicle services contracts. (Id. at ¶1). On November 2 and November 4, 2016, Defendants filed with the PTO applications to register the word mark "CARSURE" and an associated design mark (collectively, "CarSure marks"). (Id. at ¶28, 29; ECF Nos. 1-7, 1-8). Defendants began using the CarSure marks in its marketing and advertising in early 2017. (ECF No. 1 at ¶ 30).

On June 14, 2017, Plaintiff filed its complaint alleging: (1) trademark infringement under the Lanham Trademark Act of 1986, 15 U.S.C. § 1114; (2) trademark infringement and unfair competition under the Lanham Trademark Act, 15 U.S.C. § 1125(a); and (3) trademark infringement and unfair competition under Mo. Rev. Stat. §§ 417.005-417.066 and Missouri common law. (ECF No. 1). In response, Defendants filed a Rule 12(b)(6) motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (ECF No. 11). In support of their motion to dismiss, Defendants assert that Plaintiff "has not alleged sufficient facts to establish there is a likelihood of confusion between the parties' respective marks." (ECF No. 12 at 2). Plaintiff responds that the issue of likelihood of confusion is a question of fact that cannot be determined on a motion to dismiss. (ECF No. 15). Plaintiff further argues that, even if a motion to dismiss were an appropriate vehicle for resolving the likelihood of confusion, Plaintiff alleged sufficient facts to state a claim for relief. (Id.).

## II. *Legal Standard*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to

dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of its allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and "draw[s] all reasonable inferences in favor of the nonmoving party." Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (quotation omitted). In addressing a motion to dismiss, "[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

### III. *Discussion*

Defendants argue that Plaintiff fails to allege sufficient facts to state a claim for trademark infringement or unfair competition. More specifically, Defendants maintain that Plaintiff's allegations do not establish a likelihood of confusion between the parties' marks.

To prevail on a claim of trademark infringement, "a plaintiff must show that it has a

valid, protectible mark and that there is a likelihood of confusion between its mark and the defendant's mark." B&B Hardware, Inc. v. Hargis Indus., Inc., 569 F.3d 383, 389 (8th Cir. 2009). See also 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)(A); Sensient Techs. Corp. v. SensoryEffects Flavor Co., 636 F. Supp. 2d 891, 898 (E.D.Mo. 2009) (affirmed by 613 F.3d 754 (8th Cir. 2010) (trademark infringement claims pursuant to Missouri law "substantially overlap" with the Lanham Act). Likelihood of confusion exists when a defendant's use of a mark is likely to confuse, deceive, or cause mistake among an appreciable number of ordinary buyers as to the source of or association between the parties' products or services. See Duluth News-Tribune v. Mesabi Pub. Co., 84 F.3d 1093, 1096 (8th Cir. 1996).

"[L]ikelihood of confusion is a factual question." ConAgra, Inc. v. George A. Hormel, & Co., 990 F.2d 368, 371 (8th Cir. 1993). When evaluating the likelihood of confusion, courts consider the following six factors:

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion.

Roederer v. J. Garcia Carrion, S.A., 569 F.3d 855, 860 (8th Cir. 2009). These factors do not operate as a precise test, but instead represent the type of considerations a court should examine when determining likelihood of confusion. Duluth News-Tribune, 84 F.3d at 1096. Accordingly, the Court considers each factor in turn.

   A. *Strength*

Defendants argue that Plaintiff's CarShield marks are "generic and weak" because and use of the word "car" in the automotive service industry is non-distinctive and Plaintiff did not register any associated logos, arrangements, or colors. (ECF No. 12 at 3). Additionally,

4

Defendant notes that Plaintiff did not allege marketplace recognition of its mark. (Id. at 5).

"A strong and distinctive trademark is entitled to greater protection than a weak or commonplace one." Frosty Treats Inc. v. Sony Computer Ent. Am. Inc., 426 F.3d 1001, 1008 (8th Cir. 2005) (quoting SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). "Two relevant measurements of a mark's strength are its conceptual strength and its commercial strength." Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC, 745 F.3d 877, 888 (8th Cir. 2014) (citation omitted). Evidence of a plaintiff's advertising expenditures and revenues over time are relevant factors in evaluating a mark's strength. See id.

In its complaint, Plaintiff alleges that it devoted substantial resources to "building the CARSHIELD brand in the vehicle service contract market" and to the "marketing, advertising, and promotion of the CARSHIELD Marks in connection with selling vehicle services contracts." (ECF No. 1 at ¶¶ 3, 24). Plaintiff states that it displays the CarShield marks on its website, www.carshield.com, and uses the mark in print, television, and radio advertisements. (Id. at ¶¶ 25-26). Exhibits attached to Defendants' motion to dismiss contain a photograph of the CarShield mark on the baseball stadium where the River City Rascals play and an online advertisement for CarShield with a photograph of Mike Ditka, "Hall of Famer & Coach." (ECF No. 12-2).

In ruling on a motion to dismiss, the Court accepts all factual allegations and draws all reasonable inferences in favor of the Plaintiff. Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009). Based on Plaintiff's allegations relating to the advertising, marketing, and promotion of its CarShield marks, the Court may reasonably infer that the mark enjoys a degree of commercial strength. Therefore, Plaintiff alleged sufficient facts to make the strength of its mark plausible.[3]

---

[3] In support of their argument that the weakness of the CarShield mark weighs against a

*B. Similarity*

Defendants contend that Plaintiff fails to plead sufficient facts to establish a similarity between the marks. (ECF No. 12 at 5-8). "The use of identical, even dominant, words in common does not automatically mean that two marks are similar." General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987). "Rather, in analyzing the similarities of sight, sound, and meaning between two marks, a court must look to the overall impression created by the marks and not merely compare individual features." Id.

In its complaint, Plaintiff states that the CarShield and CarSure marks are "confusingly similar" and therefore "likely to cause confusion among consumers as to the source of the vehicle services advertised and sold." (ECF No. 1 at ¶¶ 31-34). Specifically, Plaintiff alleged that the marks are similar in: (1) "appearance, as both begin with the word 'car' followed by a word beginning with 's,' are displayed as one word with the 'C' and the 'S' capitalized, and use similar shades of blue"; (2) "sound, as both begin with the word 'car' followed by a word that begins with a 'sh' sound"; and (3) "meaning, as both marks suggest a sense of security and protection relating to a consumer's vehicle." (Id. at ¶ 33). Having identified similarities in the marks' appearances, sounds, and meanings, the Plaintiff sufficiently alleged similarity between the parties' marks.

---

likelihood of confusion, Defendant relies on Frosty Treats Inc. v. Sony Computer Entertainment Am. Inc., 426 F.3d 1001, 1008 (8th Cir. 2005) and Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc., 856 F.3d 416 (6th Cir. 2017). However, those cases are inapposite because the courts decided them on summary judgment. In contrast to the summary judgment procedure, for Rule 12(b)(6) motions, courts must "construe the complaint liberally in the light most favorable to the plaintiff," Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008), and, therefore, "few trademark cases are resolved on motions to dismiss." Moresource, Inc., No. 4:13-CV-235 DDN, 2013 WL 2338406 at *4 (E.D.Mo. May 29, 2013) (quoting Tecumseh Poultry LLC v. Perdue Holdings, Inc., No. 4:12-CV-3032, 2012 WL 3018255 at *4 (D. Neb. July 24, 2012)).

*C. Competition*

Defendants do not challenge Plaintiff's showing that the parties directly compete with each other. "Where products are wholly unrelated, this factor weighs against a finding that confusion is likely. Where products are related, however, it is reasonable for consumers to think that the products come from the same source, and confusion, therefore, is more likely." Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1056 (8th Cir. 2005) (citing Anheuser-Busch, Inc. v. Balducci Publications, 28 F.3d 769, 774 (8th Cir. 1994)).

In its complaint, Plaintiff states that Defendants' vehicle services contracts directly compete with those sold by Plaintiff and "the contracts are sold through overlapping channels of trade, such as through print advertisements and online." (ECF No. at ¶ 31). Plaintiff's factual allegations are sufficient to show that the parties' services are in competition with each other.

*D. Intent*

Defendants argue that Plaintiff's complaint fails to plead facts sufficient to establish that Defendants intended to "pass off" its services as those of Plaintiff. (ECF No. 12 at 8-9). Defendants suggest that, because Plaintiff "used the term 'CARSHIELD' for only the briefest of time before claiming trademark infringement," Plaintiff cannot demonstrate that its mark had achieved sufficient visual or commercial strength to support a plausible claim of bad intent. (ECF No. 12 at 9).

"While proof of bad intent is not required for success in an infringement or unfair competition, 'the absence of such intent is a factor to be considered.'" Sensient Techs., 613 F.3d at 766 (quoting Frosty Treats, 426 F.3d at 1008). "Knowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion." Id. (quoting Luigino's, Inc. v. Stouffer Corp., 170

7

F.3d 827, 830 (8th Cir. 1999)). However, "[a]n inference of an intent to trade upon the plaintiff's good will arises if the defendants, with knowledge of plaintiff's mark, chose a mark similar to that mark from the infinite number of possible marks." Aveda Corp. v. Evita Marketing, Inc., 706 F.Supp. 1419, 1429 (D. Minn. 1989) (citing Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir.) (cert. denied, 374 U.S. 830 (1963)).

In regard to bad intent, Plaintiff alleges that "CarSure [] has convinced consumers who believe they are contacting NRRM or CarShield to buy one of Defendants' contracts instead." (ECF No. 1 at ¶ 36). Plaintiff further states: "Defendants knowingly, willfully, intentionally, and maliciously" use the confusingly similar CarSure marks in its advertisements and on its website "to exploit the commercial value of the CARSHIELD Marks and falsely suggest that Defendants' vehicle services contracts originate from or are sponsored or endorsed by NRRM." (Id. at ¶ 38).

As previously stated, when considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. Torti, 868 F.3d at 671. Plaintiff's allegation that Defendants intended to exploit the commercial value of Plaintiff's Carshield marks and took advantage of consumer confusion by persuading callers intending to contact Plaintiff to purchase Defendants' contracts instead, states a plausible claim that Defendants intended to "pass off" its services as those of Plaintiff.[4]

---

[4] In support of its position, Defendants cite the Eighth Circuit's decision in Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827 (8th Cir. 1999). In affirming summary judgment for the defendant, the Luigino's court found that evidence that a consultant advised the defendant against using the name "Lean 'N Tasty" because the defendant's low-fat, frozen entrees "might be compared with Lean Cuisine entrees," did not establish an intent to "pass off" its products as the plaintiff's. Id. at 831. Unlike Luigino's, which was decided on a motion for summary judgment, the instant case is before the Court on a motion to dismiss. The inquiry under Rule 12(b)(6) is the adequacy

E. *Consumers' degree of care*

Defendants contend that Plaintiff fails to plead sufficient facts to establish the degree of care exercised by purchasers of vehicle services contracts. (ECF No. 12 at 10). "[T]he kind of product, its costs and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist[]." Lovely Skin, Inc., 745 F.3d at 889 (quoting SquirtCo., 628 F.2d at 1091). Where products are expensive, consumers are likely to exercise greater care in making purchases, thus reducing the likelihood of confusion. See id. A defendant's "distribution methods" are also relevant. See Duluth News-Tribune, 84 F.3d at 1099.

Plaintiff's complaint alleges that both parties sell vehicle services contracts, and they do so "through overlapping channels of trade, such as through print advertisements and online." (ECF No. 1 at 31). Defendant responds that confusion is unlikely because "[t]he relatively high cost of automotive service contracts (at least compared with everyday consumer goods) makes it less likely that confusion will occur" because purchasers will "employ careful consideration before spending a relatively large sum of money." (ECF No. 12 at 11). The extent of the similarities in the costs, conditions of purchase, and distribution is a factual dispute that is not appropriate for resolution on a motion to dismiss. See e.g., JS IP, LLC v. LIV Ventures, Inc., Case No. 8:11CV424, 2012 WL 2871794 at *9 (D. Neb. July 12, 2012).

F. *Actual confusion*

Defendants argue that Plaintiff insufficiently alleged actual incidents of confusion. (ECF No. 12 at 9). "Although such incidents are proof of the likelihood of confusion, the plaintiff is not required to bring forth incidents of actual confusion to succeed in an infringement case."

---

of the pleadings, and not the sufficiency of the evidence.

Sensient Tech., 613 F.3d at 768 (citing SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). See also Moresource, Inc., 2013 WL 2338406 at *3. In analyzing this factor, weight is given to "the number and extent of instances of actual confusion." Duluth News–Tribune, 84 F.3d at 1098.

In its complaint, Plaintiff states that "Defendants' use of the CARSURE Marks has caused actual confusion among consumers as to the source of vehicle contracts sold by [Plaintiff] and those sold by Defendants." (ECF No. 1 at ¶ 34). In support of this allegation, Plaintiff included a consumer's comment on an online article reflecting that consumer's confusion between the two companies. (Id. at ¶ 35). Plaintiff further alleged that consumers who report complaints on third-party websites relating to the marketing practices and/or products of vehicle services contract companies "sometimes mistake [Plaintiff] as the source of contracts and advertisements that actually come from Defendants[.]" (Id. at ¶ 37).

Defendants contend that "a single hearsay alleged instance of confusion" did not create a plausible claim of actual confusion. However, Plaintiff alleged more than a single incident of actual confusion. Furthermore, Defendants again urge the Court to consider the adequacy of the evidence, rather than the adequacy of the pleadings. Contrary to Defendants' argument, the Court finds that Plaintiff pleaded factual allegations sufficient to show that incidents of actual confusion may have occurred.

## IV.  *Conclusion*

For the reasons stated herein, the Court holds that Plaintiff alleged sufficient facts to establish a plausible claim for trademark infringement and unfair competition under the Lanham Act and Missouri law. Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiff's complaint (ECF No. 11) is **DENIED**.

　　　　　　　　　　　　　　　　　　／s／ Patricia L. Cohen
　　　　　　　　　　　　　　　　　　PATRICIA L. COHEN
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of October, 2017